UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JAMES McQUEEN,

        Petitioner,

                                     CASE NO. 2:08-CV-10586

v.                                 JUDGE DAVID M. LAWSON
                                    MAGISTRATE JUDGE PAUL J. KOMIVES

ROBERT NAPEL,

        Respondent.[1]
                              /


# REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION ................................................................. 2
II.   REPORT ........................................................................... 2
    A.   *Procedural History* ........................................................ 2
    B.   *Factual Background Underlying Petitioner's Conviction* .............................. 7
    C.   *Procedural Default* ........................................................ 8
    D.   *Standard of Review* ........................................................ 11
    E.   *Evidentiary Hearing* ....................................................... 13
    F.   *Sufficiency of the Evidence and Jury Issues (Claims I & II)* ........................... 16
          1.   *Background Relating to the Charges and Jury Instructions* ...................... 17
          2.   *Jury Instructions* ................................................... 18
               a. Misstating Elements ........................................... 18
               b. Invading Province of the Jury .................................... 21
               c. Jury Unanimity ............................................... 22
          3.   *Sufficiency of the Evidence* ........................................... 23
               a. Clearly Established Law ........................................ 23
               b. Analysis .................................................... 24
    G.   *Introduction of Confession (Claim III)* ......................................... 27
          1.   *Clearly Established Law* ............................................... 27
          2.   *Analysis* ........................................................... 29
    H.   *Prosecutorial Misconduct (Claim IV)* ........................................... 31
          1.   *Clearly Established Law* ............................................... 31
          2.   *Analysis* ........................................................... 32
               a. Mischaracterization of Facts and Evidence ......................... 32
               b. Mischaracterization of Defense .................................. 34
               c. Admission of Evidence of Petitioner's Incarceration ..................... 35
               d. Bolstering Testimony .......................................... 36

---

[1]By Order entered this date, Robert Napel has been substituted in place of Sherry Burt as the proper respondent in this action.

        e. Shifting the Burden of Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
        f. Appeal to Sympathy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
        g. Use of Religious Beliefs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
I.     *Ineffective Assistance of Counsel (Claims V & VII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
    1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
    2.    *Trial Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
        a. Failure to Object to Hearsay and Bolstering Testimony . . . . . . . . . . . . . . . . . . . . . 41
        b. Failure to Object to Prosecutorial Misconduct . . . . . . . . . . . . . . . . . . . . . . . . . . 42
        c. Failure to Object to Photographs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
        d. Failure to Call Witness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
        e. Failure to Object to Jury Instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
        f. Failure to Seek Suppression of Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
        g. Failure to Object to Other Acts Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
        h. Failure to Obtain an Expert . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
    3.    *Appellate Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
J.     *Cumulative Error (Claim VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
K.     *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . 48
    1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
    2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
L.     *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

\*      \*      \*      \*      \*

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

II.    <u>REPORT</u>:

A.    *Procedural History*

    1.     Petitioner James McQueen is a state prisoner, currently confined at the Marquette Branch Prison in Marquette, Michigan.

    2.     On July 24, 2003, petitioner was convicted of three counts of first degree criminal sexual conduct (CSC-I), MICH. COMP. LAWS § 750.520b(1)(a); and one count of second degree criminal sexual conduct (CSC-II), MICH. COMP. LAWS § 750.520b(1)(a), following a jury trial in the Kent County Circuit Court. On September 30, 2003, he was sentenced to concurrent terms of 11-40 years' imprisonment on each CSC-I conviction and 10-15 years' imprisonment on the CSC-II

conviction.

3.   Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.   MR. McQUEEN WAS DENIED HIS FEDERAL AND STATE RIGHT TO THE DUE PROCESS OF LAW AND TO A FAIR TRIAL WHEN THE COURT PERMITTED HIM TO BE TRIED AND CONVICTED ON A CHARGE WHICH HE WAS NEVER ARRAIGNED ON AND WHICH THE COURT NEVER PERMITTED THE PROSECUTOR TO ADD TO THE INFORMATION AND DEFENSE COUNSEL'S ACQUIESCENCE CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL. US CONST AM V, VI, XIV, MICH CONST 1963, ART 1, SEC 17, 20.

II.   MR. McQUEEN'S CRIMINAL SEXUAL CONDUCT CONVICTIONS MUST BE REVERSED BECAUSE DEFENSE COUNSEL'S FAILURE TO OBJECT TO OUTCOME-DETERMINATIVE HEARSAY TESTIMONY CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. McQueen*, No. 252871, 2005 WL 2016460 (Mich. Ct. App. Aug. 23, 2005) (per curiam).

4.   Petitioner, proceeding *pro se*, sought leave to appeal in the Michigan Supreme Court, raising the following claims:

I.   MR. McQUEEN'S CONVICTIONS MUST BE DISMISSED OR REVERSED WHERE PLAIN ERROR WAS COMMITTED WHEN OUTCOME DETERMINATIVE, HIGHLY PREJUDICIAL, LOGICALLY IRRELEVANT, NON-PROBATIVE TESTIMONIAL EVIDENCE OF ALLEGED PRIOR BAD ACTS BY DEFENDANT AND TESTIMONIAL EVIDENCE, ONLY AS AN EFFORT TO BOLSTER COMPLAINANT'S TESTIMONY FOR TRUTHFULNESS WITHOUT SUPPORT, WAS ADMITTED IN CLEAR VIOLATION OF MRE 404 AND MRE 402, AS THE MICHIGAN SUPREME COURT HELD IN ITS 2004 DECISION IN PEOPLE V. KNOX.

II.   PLAIN ERROR OCCURRED WHEN [THE] TRIAL COURT OMITTED INSTRUCTIONS ON THE REQUIRED ELEMENTS OF THE OFFENSES CHARGED AFFECTING DEFENDANT'S RIGHTS TO A FAIR TRIAL.

III.     MR. McQUEEN'S CONVICTIONS MUST BE REVERSED DUE TO
          INEFFECTIVE ASSISTANCE OF COUNSEL CONSTITUTED WHERE
          DEFENSE COUNSEL: 1) FAILED TO FILE [A] MOTION FOR A NEW
          TRIAL ON THE GROUNDS THAT HIS CONVICTION WAS AGAINST
          THE SUFFICIENCY OF THE EVIDENCE, 2) ALLOWED THE
          INTRODUCTION OF "OTHER ACTS" EVIDENCE IN
          CONTRADICTION OF MRE 404(B), 3) FAILED TO OBJECT TO
          PROSECUTORIAL MISCONDUCT, 4) FAILED TO OBJECT OR MOVE
          TO CORRECT THE JURY INSTRUCTIONS WITH REGARD TO THE
          CHARGES.

IV.      DEFENDANT/APPELLANT IS ENTITLED TO A RENEWED
          APPELLATE REVIEW DUE TO INEFFECTIVE ASSISTANCE OF
          APPELLATE COUNSEL, WHEN [THE] TRIAL COURT DENIED [A]
          MOTION FOR NEW APPELLATE ATTORNEY, APPELLATE
          ATTORNEY DID NOT SOLICIT INFORMATION FROM
          DEFENDANT/APPELLANT, AND WHERE SOLID, MERITORIOUS,
          SIGNIFICANT AND OBVIOUS ISSUES WERE NOT BROUGHT ON
          APPEAL TO THE COURT OF APPEALS['S] ATTENTION IN
          VIOLATION OF DEFENDANT/APPELLANT'S CONSTITUTIONAL
          RIGHTS.

V.       MR. McQUEEN'S CONVICTIONS MUST BE REVERSED WHERE THE
          CUMULATIVE EFFECTS OF ERRORS DENIED HIM A FAIR TRIAL.

The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See*

*People v. McQueen*, 474 Mich. 1026, 708 N.W.2d 409 (2006).

          5.       Petitioner subsequently filed a motion for relief from judgment in the trial court

pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

I.       DEFENDANT'S JURY CONVICTION ON COUNT FOUR IS AGAINST
          THE SUFFICIENCY OF THE EVIDENCE WHERE THE INSTRUCTED
          ELEMENTS WERE NOT MET AND THE JURY'S VERDICT
          DEMONSTRATES DEFENDANT DID NOT RECEIVE A FAIR TRIAL.

II.      DEFENDANT WAS DENIED A FAIR TRIAL WHERE THE
          PROSECUTOR COMMITTED MISCONDUCT BY INTRODUCING
          PRIOR BAD ACTS, AND TRIAL COUNSEL WAS INEFFECTIVE FOR
          FAILING TO OBJECT, AND TRIAL COURT ERRED IN ALLOWING
          ADMISSION.

III. DEFENDANT WAS DENIED A FAIR TRIAL WHERE PROSECUTOR INTRODUCED TESTIMONY REGARDING AN ALLEGED STATEMENT, WHICH WAS CHARACTERIZED AS AN ADMISSION OR CONFESSION OF GUILT, MADE TO POLICE BY DEFENDANT IN VIOLATION OF DEFENDANT'S MIRANDA RIGHTS, AND TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO MAKE DISCOVERY AND FAILING TO OBJECT, AND TRIAL COURT ERRED BY ALLOWING ITS ADMISSION.

IV. DEFENDANT WAS DENIED A FAIR TRIAL WHERE THE PROSECUTOR IMPROPERLY BOLSTERED THE CREDIBILITY AND CONSISTENCY OF THE COMPLAINANT BY ELICITING WITNESS TESTIMONY REGARDING THE CREDIBILITY AND CONSISTENCY OF THE COMPLAINANT, AND TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT, AND TRIAL COURT ERRED BY ALLOWING ITS ADMISSION.

V. DEFENDANT WAS DENIED A FAIR TRIAL WHERE PROSECUTOR ENGAGED IN MISCONDUCT BY PRESENTING IMPROPER QUESTIONS REGARDING DEFENDANT'S INCARCERATION, EXPERT TESTIMONY STATING ACTUAL ABUSE, AND OTHER MATTERS, AND TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT, AND TRIAL COURT ERRED BY ALLOWING ITS ADMISSION.

VI. DEFENDANT WAS DENIED A FAIR TRIAL WHERE PROSECUTOR ENGAGED IN MISCONDUCT BY APPEALING TO THE SYMPATHY OF THE JURY AND COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT.

VII. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE INTRODUCTION OF HIGHLY INFLAMMATORY GRAPHIC PHOTOGRAPHS.

VIII. DEFENDANT WAS DENIED A FAIR TRIAL WHERE THE PROSECUTOR ENGAGED IN MISCONDUCT BY MAKING IMPROPER ARGUMENTS, INCLUDING THE AUTOMATICALLY REVERSIBLE ERROR OF INJECTING RELIGION INTO THE PROCEEDINGS, AND TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT.

IX. TRIAL COURT ERRED BY OMITTING AND CHANGING REQUIRED ELEMENTS OF THE OFFENSES CHARGED IN THE JURY INSTRUCTIONS AFFECTING DEFENDANT'S SUBSTANTIAL RIGHTS AND TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT

OR SEEK CORRECTIONS.

X.     TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO CALL A KEY
       WITNESS TO A SUBSTANTIVE ISSUE IN QUESTION THAT WOULD
       HAVE SIGNIFICANTLY DAMAGED THE CREDIBILITY OF THE
       COMPLAINANT AND CALL[ED] INTO QUESTION THE
       TRUTHFULNESS OF COMPLAINANT'S MOTHER'S TESTIMONY.

XI.    THE CUMULATIVE EFFECTS OF ERRORS DENIED DEFENDANT A
       FAIR TRIAL.

XII.   DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF
       APPELLATE COUNSEL WHERE COUNSEL DID NOT SOLICIT
       INFORMATION FROM DEFENDANT, FAILED TO RAISE
       SUBSTANTIAL, OBVIOUS, AND MERITORIOUS ISSUES, AND
       ENGAGED IN EITHER INCOMPETENCY OR LACK OF ADVOCACY.

XIII.  DEFENDANT DEMONSTRATES BOTH GOOD CAUSE AND ACTUAL
       PREJUDICE STEMMING FROM THE ERRORS AND IRREGULARITIES
       THAT SUPPORT HIS CLAIMS FOR RELIEF IN THIS POST-APPEAL
       PROCEEDING.

On August 7, 2006, the trial court denied petitioner's motion for relief from judgment in a brief

order.  *See People v. McQueen*, No. 03-01780-FC (Kent County, Mich., Cir. Ct. Aug. 7, 2006).  The

Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave

to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing

entitlement to relief under MCR 6.508(D)."  *People v. McQueen*, 480 Mich. 920, 740 N.W.2d 260

(2007); *People v. McQueen*, No. 272761 (Mich. Ct. App. May 18, 2007).

       6.     Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus

on February 8, 2008.  As grounds for the writ of habeas corpus, he raises seven claims: (1)

insufficient evidence; (2) improper jury instructions and denial of a unanimous verdict; (3)

admission of confession taken in violation of *Miranda*, (4) prosecutorial misconduct; (5) ineffective

assistance of trial counsel: (6) cumulative error; and (7) ineffective assistance of appellate counsel.

7.      Respondent filed his answer on August 18, 2008. He contends that petitioner's claims are all barred by petitioner's procedural default in the state courts, with the exception of petitioner's ineffective assistance of counsel claim based on counsel's failure to object to hearsay testimony. With respect to that claim, respondent contends that petitioner's claim is without merit.

8.      Petitioner filed a reply to respondent's answer on September 9, 2008.

B.    *Factual Background Underlying Petitioner's Conviction*

Petitioner was convicted of multiple sexual assaults of his stepdaughter. The evidence adduced at trial was briefly summarized in petitioner's brief on appeal in the Michigan Court of Appeals:

> It was the prosecutor's theory of the case that in Kent County beginning about February, 2002 when Dana McQueen was 10 or 11 years old her stepfather, Mr. McQueen, started sexually fondling her and penetrating her vagina with his finger and penetrating her anus with his penis. That Dana eventually told a friend who told her mother who told Dana that if she did not tell her mother she would call the police. Dana told her mother who then confronted Mr. McQueen who then attempted suicide and was later arrested for these charges.
> It was the defendant's theory of the case that Dana was not being truthful about the things she said occurred. . . .
> To prove his case, the prosecutor presented Dana McQueen who, if believed, testified to sufficient facts on which the jury could convict Mr. McQueen of the offenses charged. (II 140, 143). Dana testified: "Once he told me that the devil was tempting him with me, but that was all he ever really said about it." (II 144). And the prosecutor presented three of Dana's friends whom she told about the incidents and they repeated what she told them. (III 191, 197, 205). And the friend's mother testified about what Dana told her. (II 211). And Julie McQueen, Mr. McQueen's wife and mother of Dana, testified about what Dana had told her her stepfather had done. (II 225). Julie McQueen also testified that when she discussed Dana's allegations with her husband that he first denied it then he said: "She is not lying." (II 228). The prosecutor presented a medical social worker who interviewed Dana on January 7, 2003 and she testified to what Dana told her. (II 263, 264). A medical doctor, "a full-time child protection specialist" (II 272), who examined Dana on January 7, 2003, told the jury about what Julie McQueen told her about the incident that Dana had told her mother about. (II 275). The doctor took pictures of Dana's vaginal and rectal area, these pictures were admitted into evidence, and the doctor told the jury of a tear in the hymen (II 279) and pointed out the multiple healing

lacerations around the anal area. (II 281). The doctor opined: "The patient's physical examination showed clear evidence of blunt force or trauma. The overall assessment of abuse was definite evidence of abuse or sexual contact, given the patient's physical exam findings and no history of accident, trauma, or chronic disease." (II 284-285). The prosecutor presented a social worker who was qualified as an expert in "children, why they disclose and when they disclose, things of that nature" (II 306), who had not interviewed Dana but testified that it is "typically the case that they do not disclose right away." (II 306). And he further opined that that could be for any number of reasons. (II 307). An officer that was present when Mr. McQueen was removed from his basement bedroom [when] he was not responsive testified that he found a note "Laying on the back of the couch" which stated "Tell the family that I had died of a sudden heart attack" and it had some life insurance information on it. (III 325). And to conclude his case the prosecutor presented to the jury the officer in charge of the case who interview[ed] Dana and told the jury yet again what Dana had told him. (III 333, 334, 335).

The prosecutor rested. (III 349).

The defense called an adult male friend of Mr. and Mrs. McQueen who testified that after Mr. McQueen was incarcerated for this offense he took Dana and her mother to dinner and Dana "acted like a perfectly normal girl, young lady." (III 356).

Mr. McQueen testified that he loves his wife and children (III 366), that he had a successful computer business (III 367-368), that he was very strict with Dana and made her work hard (III 374). He denied he ever touched Dana for sexual gratification and denied that he told anyone that he did anything sexually wrong with Dana. (III 376). After his wife told him what Dana accused him of and because of the many bad things that were happening in his life, he decided to take a bunch of pills and let his family live off the life insurance. (III 385, 386).

Def.-Appellant's Br. on Appeal, in *People v. McQueen*, No. 252871 (Mich. Ct. App.), at 1-4.

C.     *Procedural Default*

Respondent first contends that all of petitioner's claims, with the exception of the claim that counsel was ineffective for failing to object to the victim's hearsay statements, are barred by petitioner's procedural default in the state courts, because petitioner failed to raise these claims on direct appeal. Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See*

*Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263. Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

Here, petitioner first presented his purportedly defaulted habeas claims in his motion for relief from judgment. Michigan Court Rule 6.508, governing motions for relief from judgment, provides that the movant "bears the burden of establishing entitlement to relief." MICH. CT. R. 6.508(D). The rule goes on to provide, in three separately numbered paragraphs, procedural situations in which relief will not be granted: (1) where an appeal relating to the conviction is pending; (2) where the claim has already been ruled upon in a prior appeal or postconviction motion; and (3) where the claim could have been raised in a prior appeal or postconviction motion but was not. *See* MICH. CT. R. 6.508(D)(1)-(3). The Michigan Court of Appeals and the Michigan Supreme Court both rejected petitioner's appeal based on his "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." The Sixth Circuit has conflicting decisions regarding the sufficiency of this language to invoke the procedural bar in Rule 6.508(D)(3) and constitute a procedural default in federal court. *Compare Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000)

(language alone sufficient to constitute invocation of procedural bar), *with Abela v. Martin*, 380 F.3d 915, 923-24 (6th Cir. 2004) (language insufficient where lower court opinion rejected claims on the merits). The Sixth Circuit has recently granted rehearing *en banc* to resolve this issue. *See Guilmette v. Howes*, No. 08-2256 (6th Cir. Mar. 12, 2010).

While the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). Thus, while the procedural default issue should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also*, *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); *Walter v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995). In light of the difficult questions discussed above, the procedural default analysis is significantly more complicated than the analysis of petitioner's substantive claims for relief, and the Court should therefore proceed to the merits of petitioner's claims. Indeed, the Sixth Circuit itself has taken this approach. *See Roush v. Burt*, 313 Fed. Appx. 754, 757-58 (6th Cir. 2008) (noting the Sixth Circuit's conflicting decisions and the rule that procedural default is not jurisdictional, and concluding "because we affirm the district court's decision on the merits, we leave issues regarding procedural default and the generic use of MCR 6.508(D) for another day.").

Further, even were the Court to conclude that petitioner's claims are procedurally defaulted, it is still necessary to consider the claims on the merits. As noted above, petitioner can still have his

defaulted claims reviewed on the merits if he can show cause for, and prejudice attributable to, his default in the state courts.  Petitioner contends that his appellate counsel was ineffective for failing to raise these claims on direct appeal.  If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To demonstrate that appellate counsel was ineffective petitioner must show, *inter alia*, that his claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).  Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted.  *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

D.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

>        (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>        (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States; or
       (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the

holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.      *Evidentiary Hearing*

Before addressing the merits, it is necessary to consider whether an evidentiary hearing is appropriate. Much of petitioner's argument with respect to his claims relies on assertions which are not supported by the state court record. In his reply brief, petitioner explicitly requests an evidentiary hearing with respect to his ineffective assistance of trial counsel claims. The Court should conclude that an evidentiary hearing is not appropriate.

Pursuant to 28 U.S.C. § 2254(e)(2), "[i]f the applicant has failed to develop the factual basis

of the a claim in State court proceedings, the court shall not hold an evidentiary hearing on a claim unless" one of two exceptions is met. 28 U.S.C. § 2254(e)(2). Here, an evidentiary hearing is not permissible because petitioner has "failed to develop the factual basis" of his ineffective assistance claim in the state courts. In *Michael Williams v. Taylor*, 529 U.S. 420 (2000),[2] the Court explained that Congress' use of the term "'failed to develop' implies some lack of diligence[.]" *Id*. at 430. Thus, "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id*. at 432. Under Michigan law, to develop the factual basis of his ineffective assistance of counsel claim petitioner was required to file a motion for a new trial and evidentiary hearing in the trial court or a motion to remand for that purpose in the court of appeals. *See People v. Ginther*, 390 Mich. 436, 443-44, 212 N.W.2d 922, 925 (1973); *People v. Gray*, 125 Mich. App. 482, 486, 336 N.W.2d 491, 493 (1983). Here, neither the court of appeals materials submitted by respondent nor the trial court docket sheet reflects the filing of a motion for an evidentiary hearing on any claim.

It is true, as petitioner suggests, that counsel did alternatively request a *Ginther* hearing in addition to a new trial in the body of his appellate brief. This request, however, was a single sentence seeking alternative relief at the conclusion of counsel's argument regarding the ineffective assistance claim, and after the brief asserted that an evidentiary hearing was *not* necessary because the claim could be resolved on the record. The Michigan Court Rules, however, require that such

---

[2]This case should not be confused with the *Williams v. Taylor* case discussed in part C, *supra*, in which the Court explained the standard of review under § 2254(d). Although both cases bear the same caption and were decided on the same date, the petitioners differed in the two cases. For clarity, I refer to the case discussing § 2254(e)(2) by the petitioner's full name–"Michael Williams"–rather than just by "Williams" as is the ordinary citation convention. *See Watkins v. Miller*, 92 F. Supp. 2d 824, 828 n.1 (S.D. Ind. 2000) (taking same approach).

a request for an evidentiary hearing be made in a separate motion. *See* MICH. CT. R. 7.211(C)(1). Petitioner's "alternative request in [his] appellate brief for a *Ginther* hearing is not a timely *motion for remand as required by MCR 7.211(C)(1).*" *People v. Fisher*, No. 262961, 2007 WL 283799, at *2 n.2 (Mich. Ct. App. Feb. 1, 2007) (per curiam); *see also*, *People v. Carter*, No. 232862, 2003 WL 887594, at *4 (Mich. Ct. App. Mar. 6, 2003) (per curiam) (*Ginther* hearing not properly requested when request was made as alternative relief request in body of brief and request was included in neither statement of appellate claims nor a properly filed motion). Petitioner's seeking of this alternative relief in the body of his appellate brief was insufficient to constitute diligent pursuit of an evidentiary hearing under § 2254(e)(2), in light of Rule 7.211(C)(1) and the Michigan courts' interpretation of that rule. *See Torrez v. McKee*, 601 F. Supp. 2d 920, 952 (W.D. Mich. 2009); *Burt v. Berghuis*, No. 1:02-cv-623, 2007 WL 2491106, at *24 & n.3 (W.D. Mich. June 13, 2007), *magistrate's report adopted by* 2007 WL 2791105 (W.D. Mich. Sept. 24, 2007).

Further, even if petitioner's request for an evidentiary hearing as alternative relief could constitute diligent pursuit of a state court evidentiary hearing, it would not do so here because petitioner's request otherwise failed to comply with Rule 7.211(C)(1). That rule requires that a motion to remand show that "the development of a factual record is required for appellate consideration of the issue," and "be supported by affidavit or offer of proof regarding the facts to be established at the hearing." MICH. CT. R. 7.211(C)(1)(a). Petitioner's alternative request for relief did not attempt to demonstrate the necessity of a further factual record; indeed, it did not discuss the need for a hearing at all beyond simply requesting one. Nor was petitioner's appellate brief accompanied by any offer of proof regarding the proposed testimony at an evidentiary hearing. *See People v. Murray*, No. 239287, 2003 WL 22244699, at *4 n.4 (Mich. Ct. App. Sept. 30, 2003)

(per curiam)("MCR 7.211(C)(1)(a)(ii) specifically requires that a motion to remand 'must be supported by affidavit or other proof regarding the facts to be established at a hearing.' A request to remand, presented as proposed relief in a party's appellate brief, must also meet this preliminary threshold before this Court will grant relief."); *see also*, *People v. Hawthorne*, No. 280289, 2009 WL 454927, at *2 n.1 (Mich. Ct. App. Feb. 24, 2009) (per curiam). Petitioner's failure to make an offer of proof as required by Rule 7.211(C)(1)(a) renders his attempt to develop the factual basis of his claim less than diligent under § 2254(e)(2). *See Moore v. Berghuis*, No. 00-CV-73414, 2001 WL 277047, at *7 (E.D. Mich. Feb. 28, 2001) (Steeh, J.). In short, petitioner failed to comply in a number of respects with the state requirements for obtaining an evidentiary hearing. He thus did not diligently attempt to develop the factual basis of his claim in state court, and is not entitled to an evidentiary hearing here. *See Michael Williams*, 529 U.S. at 437 (§ 2254(e)(2) diligence requires "that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law."); *Smith v. Bowersox*, 311 F.3d 915, 921 (8th Cir. 2002) (petitioner's "failure to comply with [state] law reflects a lack of diligence."). Accordingly, the Court should conclude that petitioner is not entitled to an evidentiary hearing.

F.      *Sufficiency of the Evidence and Jury Issues (Claims I & II)*

In his first two claims, petitioner contends that the evidence was insufficient to support his conviction on Count 4 of the information, and that with respect to this count the jury was improperly instructed and he was denied a unanimous jury. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Background Relating to the Charges and Jury Instructions*

Under Michigan law, "[a] person is guilty of criminal sexual conduct in the first degree if

he or she engages in sexual penetration with another person" and one of several listed circumstances is present. MICH. COMP. LAWS § 750.520b(1). As relevant here, a person may be guilty of CSC-I if he engages in sexual penetration with another person and the other person is either "under 13 years of age," or "at least 13 but less than 16 years of age and . . . [t]he actor is a member of the same household as the victim." MICH. COMP. LAWS § 750.520b(1)(a), (b)(I). A person is guilty of second degree criminal sexual conduct (CSC-II) if the same circumstances are present, but the actor engages in "sexual contact" rather than "sexual penetration." MICH. COMP. LAWS § 750.520c(1).[3]

As explained by the Michigan Court of Appeals, petitioner was originally bound over as charged on two counts of CSC-I based on a victim under 13 years of age, and one count of CSC-II on the same basis. However, during the preliminary examination, the victim testified that the last act of sexual penetration occurred after she had turned 13 years old. The prosecutor subsequently filed an amendment to the information, adding a count of CSC-I involving a victim 13-16 years old residing in the same household as petitioner. *See McQueen*, 2005 WL 2016460, at *1, slip op. at 1-2. Specifically, the amended information, a copy of which has been lodged with the Court, charged the three counts of CSC-I: an act of anal penetration with the victim when she was under 13 years old (Count 1); an act of digital/vaginal penetration with the victim when she was under 13 years old (Count 2); and an act of anal penetration with the victim when she was between 13 and

---

[3]Under the statute, "sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MICH. COMP. LAWS § 750.520a(r). "Sexual contact" is defined as the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner[.]" MICH. COMP. LAWS § 750.520a(q).

16 years old and residing in the same household as petitioner (Count 4).

2.      *Jury Instructions*

Petitioner first contends that he was denied a fair trial by the trial court's instructions to the jury regarding the elements of the different CSC-I offenses with which he was charged. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

*a. Misstating Elements*

The trial court's instruction to the jury on the different CSC-I charges was, as petitioner argues and as the court of appeals recognized, erroneous. In instructing the jury on the CSC-I charges, the trial court failed to differentiate between the types of CSC-I charged in the three CSC-I counts. The court began its instruction on the CSC-I charges by informing the jury that it would "talk about criminal sexual conduct in the first degree together. I don't need to talk about it three times. For purposes of this case it's the same thing." Trial Tr., dated 7/24/03, at 471. After informing the jury of various things that did not need to be proved, *see id*. at 471-75, the court then instructed:

> Now, to prove the offense of criminal sexual conduct in the first degree, which is what's alleged here to have happened at least three times, the evidence in this case, it's all the evidence, taken without regard for who presented it, has to leave you firmly convinced that there was a sexual penetration involving the teenager who testified here, and that when it happened she was fifteen or younger, and either lived in the same household as Mr. McQueen or was related to him by a certain degree.

*Id*. at 476. The court then instructed the jury on the definition of "penetration." *See id*. at 476-78. There is no doubt that the trial court's instruction conflated the two CSC-I charges based on a victim under 13 years old with the one CSC-I charge based on a victim 13-16 years old and residing in the same household as the perpetrator. Essentially, the court's instruction treats all three CSC-I charges

as requiring a showing that the victim resided in the same household as petitioner.[4] Any error in this instruction, however, does not entitle petitioner to habeas relief because the error is harmless.

In *Chapman v. California*, 386 U.S. 14 (1967), the Supreme Court ruled that where a court finds a constitutional error on direct review, a conviction may stand only if the error is harmless beyond a reasonable doubt. *See id.* at 24. However, in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the Court held that a federal habeas court does not apply the *Chapman* harmless error analysis–which asks whether the error was harmless beyond a reasonable doubt–but rather the harmless error analysis announced in *Kotteakos v. United States*, 328 U.S. 750, 776 (1946), which asks whether the error had a substantial and injurious effect on the jury's verdict. *See Brecht*, 507 U.S. at 635-37. In *Fry v. Pliler*, 551 U.S. 112 (2007), the Court explained that *Brecht* established a categorical rule regarding the collateral review harmless-error inquiry, and that nothing in the AEDPA alters this categorical rule. Thus, the Court held that "in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the [*Brecht* standard] whether or not the state appellate court recognized the error and reviewed it for harmlessness under the [*Chapman* standard]." *Fry*, 551 U.S. at 121-22. In *Brecht*, the Supreme Court ruled that trial error does not entitle a state prisoner to habeas relief unless the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 637 (quoting *Kotteakos*, 328 U.S. at 776 (1946)). Further, the Supreme Court has more recently

---

[4]Petitioner makes much of the fact that the court used the age 15, which is not stated in the statute, as did the Michigan Court of Appeals. However, the trial court's instruction does not appear to misstate the age element of the offense. Under the statute, CSC-I is established by penetration with a victim residing in the same household as the perpetrator and who is "at least 13 but less than 16 years." MICH. COMP. LAWS § 750.520b(1)(b)(I). To say that someone is "fifteen or younger," as the trial court did, is the equivalent of saying that someone is "less than 16 years" old, as the statute phrases it.

instructed that a federal habeas court need not be certain that the error had a substantial and injurious effect on the verdict; rather, "when a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless. And, the petitioner must win." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (quoting *Brecht*, 507 U.S. at 637). As the Court explained in *Neder v. United States*, 527 U.S. 1 (1999), the Court has "often applied harmless-error analysis to cases involving improper instructions on a single element of the offense." *Id.* at 9. Relying on these cases, the Court in *Neder* held that harmless error analysis is applicable even where the trial court completely fails to instruct the jury on a necessary element of the offense. *See id.* at 9-15. Applying this harmless error analysis, the Court concluded that where "the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." *Id.* at 17.

Applying *Neder* here, it is clear that the court's erroneous instruction on the CSC-I charges was harmless. The court properly instructed the jury regarding the penetration element of the CSC-I charges, and petitioner does not contend that there was any error in the definition of this element given to the jury. The only error was in the court's instruction to the jury that it needed to find both that the victim was under 16 years of age and residing in the same household as petitioner for each of the three charges. Properly viewed, the prosecution needed to show this only with respect to Count 4 of the amended information; with respect to Counts 1 and 2 the prosecution needed to show that the victim was under 13 years of age, but not that she resided in the same household as petitioner. The court's conflating of the two types of CSC-I charges, however, was harmless beyond

any doubt. The issue at trial was whether petitioner had in fact penetrated the victim. There was no dispute as to her age at the time of the alleged penetrations, nor was there any dispute as to the fact that she resided in the same household as petitioner, her stepfather. Because there was no dispute as to these elements, and because the other CSC-I element–penetration–was properly instructed, any error in the instructions was harmless under *Neder*. *See Hilton v. Workman*, No. CIV-07-149-C, 2007 WL 2498786, at *3 (W.D. Okla. Aug. 30, 2007); *Glover v. State*, 863 So. 2d 236, 238 (Fla. 2003), *habeas corpus denied by Glover v. McDonough*, No. 6:07-cv-660, 2009 WL 1046261, at *8 (M.D. Fla. Apr. 20, 2009); *State v. Garcia*, 28 P.3d 327, 331 (Ariz. Ct. App. 2001). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Invading Province of the Jury

Petitioner also contends that the trial judge invaded the province of the jury when he instructed, regarding the age/household element:

> And, frankly, everyone acknowledges that she, by virtue of being his stepdaughter, was related in that degree, and they did live in the same household. So, for all practical purposes, everyone agrees that's not an issue here. The issue then becomes, was there a sexual penetration. If sexual penetration involving her occurred to her, given her age, then we're talking about criminal sexual conduct in the first degree, and if you're not satisfied the penetrations occurred, then we're not talking about any crime at all.

Trial Tr., dated 7/24/03, at 476. However, the victim's age and household residency was, in fact, undisputed by the parties. It is well established that "when a fact is not made an issue by defendant and it is shown without controversy by the evidence, the trial judge does not commit reversible error in stating that fact to the jury." *Malone v. United States*, 238 F.3d 851, 852 (6th Cir. 1956); *see also*, *United States v. Jackson*, 436 F.2d 39, 41 (9th Cir. 1970) ("The trial judge in a criminal case may instruct the jury on a question of law which is based upon undisputed facts."); *Delgado v. Lafler*,

No. 2:04-CV-73747, 2008 WL 1902099, at *4 (E.D. Mich. Apr. 30, 2008) (Hood, J.); *cf. United States v. Barrow*, 118 F.3d 482, 492-93 (6th Cir. 1997) (finding no plain error in instruction, which was not objected to by defendant, regarding undisputed element of offense). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Jury Unanimity

Petitioner also contends that the trial court's instructions deprived him of his right to a unanimous verdict, because the court did not instruct the jury that it had to unanimously find which specific penetration occurred for each of the three CSC-I charges. *See* Trial Tr., dated 7/24/03, at 484-86. The Court should conclude that petitioner is not entitled to habeas relief on this claims. First, there is no constitutional right to a unanimous verdict in a state criminal trial. The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district in wherein the crime shall have been committed[.]" U.S. CONST. amend. VI. Although this provision has been interpreted as requiring jury unanimity in federal prosecutions, this requirement has not been applied to the states through the Due Process Clause of the Fourteenth Amendment. Thus, as a general matter, there is no constitutional requirement that a state criminal jury reach a unanimous verdict, *see Schad v. Arizona*, 501 U.S. 624, 630 (1991) (plurality opinion); *Brown v. Louisiana*, 447 U.S. 323, 330-31 (1980); *Apodaca v. Oregon*, 406 U.S. 404, 410-11 (1972) (plurality opinion),[5] and a jury unanimity claim, standing alone, will therefore afford no basis for habeas relief, *see Carlyle v. Rowland*, No. 91-55385, 1992 WL 122254, at *1 (9th Cir. June 3, 1992).

---

[5]In certain situations a state criminal defendant may have a constitutional due process right to a unanimous verdict, such as where he is tried before a six-person jury. *See Brown*, 447 U.S. at 331. However, these circumstances are not present here.

Second, in *Richardson v. United States*, 526 U.S. 813 (1999), "the Supreme Court distinguished between the elements of a crime, which it held had to be determined unanimously, and the means by which an element may be accomplished, which does not require unanimity." *United States v. Davis*, 306 F.3d 398, 413 (6th Cir. 2002) (discussing *Richardson*, 526 U.S. at 817); *see also*, *Schad v. Arizona*, 501 U.S. 624, 632-45 (1991) (plurality opinion). Here, each CSC-I charge could be satisfied by any act of penetration. The fact that there were multiple acts of both digital-vaginal penetration and penile-anal penetration did not require a separate unanimity instruction; it was sufficient that the trial court instructed–as it did, *see* Trial Tr., dated 7/24/03, at 484-86–that each CSC-I count required a separate act of penetration. *See Farley v. Lafler*, 193 Fed. Appx. 543, 550 (6th Cir. 2006); *cf. Coe v. Bell*, 161 F.3d 320, 348 (6th Cir. 1998) (citing *Schad* for the proposition that "it is acceptable for a first-degree murder conviction to be based on two alternative theories even if there is no basis to conclude which one (if only one) the jury used."); *United States v. DeJohn*, 368 F.3d 533, 542 (6th Cir. 2004) (under federal firearm possession statute, jury need not be instructed that it must unanimously find possession of a particular firearm).

3.    *Sufficiency of the Evidence*

Petitioner also contends that the evidence was insufficient to establish the CSC-I count alleged in Count 4 of the amended information. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

a. *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).

However, under the amended version § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision. Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson*, 443 U.S. at 324, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

*b. Analysis*

Much of petitioner's sufficiency of the evidence claim is directed not at Count 4 specifically, but at the sufficiency of the evidence in general. Petitioner contends that the evidence was insufficient because the victim's testimony was inconsistent and not credible, and because her testimony was not supported by the evidence. These arguments are without merit. It is well-established that a reviewing court, whether on direct appeal or habeas review, "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United States v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *Walker v. Russell*, 57 F.2d 472, 475-76 (6th Cir. 1995); *see also*, *United States v. Bailey*, 444 U.S. 394, 414-15 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story."). "The fact that the testimony is contradictory does not mean that evidence is insufficient, only that the jury must make credibility determinations." *Government of the Virgin Islands v. Isaac*, 50 F.3d 1175, 1179 (3d Cir. 1995). It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326; *United States v. Sherwood*, 98 F.3d 402, 408 (9th Cir. 1996). Further, Michigan law explicitly provides that "[t]he testimony of a victim need not be corroborated in prosecutions under [the criminal sexual conduct statutes]." Mich. Comp. Laws § 750.520h. Thus, "[i]t is a well established rule that a jury may convict on the uncorroborated evidence of a CSC victim." *People v. Lemmon*, 456 Mich. 625, 642 n.22, 576 N.W.2d 129, 137 n.22 (1998). This rule comports with the more general rule in sufficiency of the evidence cases that the testimony of the victim standing alone is sufficient evidence to convict a defendant beyond a reasonable doubt. *See, e.g.*, *United States v. Mejia*, 909 F.2d 242, 245 (7th Cir. 1990); *Holderfield v. Jones*, 903 F. Supp. 1011, 1017 (E.D. La. 1995). "Even in the face of inconsistent evidence, a

victim's testimony alone can be sufficient to support a guilty verdict." *United States v. Kenyon*, 397 F.3d 1071, 1076 (8th Cir. 2005).

Turning to Count 4 specifically, at the preliminary examination the victim testified that the last time petitioner had anally penetrated her was in November 2002. *See* Prelim. Exam. Tr., at 29. Because this was after the victim had turned 13 years old, the prosecutor amended the information to include Count 4. At trial, the victim testified that an act of penetration had occurred in November 2002, but that it was digital-vaginal penetration, and that she had misspoken at the preliminary examination when she testified that it was an act of anal penetration. *See* Trial Tr., dated 7/23/03, at 169-70. This testimony, however, does not render the evidence insufficient to support petitioner's conviction. An act of digital-vaginal penetration in November 2002 constitutes an act of first degree criminal sexual conduct just as an act of anal penetration does. Because the victim testified to a separate, third act of penetration, the evidence was sufficient regardless of how the penetration was accomplished.

As a number of courts with similar sexual assault statutes have observed, "[t]he type of sexual penetration is not an element of the offense, and its inclusion in the indictment is merely surplusage." *People v. Ross*, 917 N.E.2d 1111, 1121 (Ill. Ct. App. 2009) (internal quotation omitted); *see also*, *People v. Rodriguez*, 914 P.2d 230, 258 (Colo. 1996); *Chandler v. State*, 789 So. 2d 109, 112 (Miss. Ct. App. 2001). Michigan courts take the same view with respect to the Michigan criminal sexual conduct statutes. *Cf. People v. Stricklin*, 162 Mich. App. 623, 633, 413 N.W.2d 457, 463 (1987) (amendment of information at trial did not result in variance because changing type of penetration alleged did not result in a new, different charge of CSC-I). It is well established that "[a] court may ignore independent and unnecessary allegations in an indictment.

Allegations in the indictment that are not necessary to establish a violation of a statute are surplusage and may be disregarded if the remaining allegations are sufficient to charge a crime." *United States v. McIntosh*, 23 F.3d 1454, 1457 (8th Cir. 1994). "[L]anguage that describes elements beyond what is required under statute is surplusage and need not be proved at trial." *Bargas v. Burns*, 179 F.3d 1207, 1216 n.6 (9th Cir. 1999); *see also*, *United States v. Cross*, 113 F. Supp. 2d 1253, 1255 (S.D. Ind. 2000). Here, Count 4 of the amended information alleged that petitioner "did engage in sexual penetration, to-wit: ANAL, with [the victim], under the following existent circumstance(s), to-wit: said victim was at least 13 but less than 16 years of age and defendant and victim were related by blood or affinity to the 4th degree[.]" Removing the allegation that the type of penetration was anal, the information still alleges a sexual penetration and the age/relationship element of the CSC-I offense. Because these are the only elements required to be alleged and proved by the CSC-I statute, the inclusion of the specific type of penetration was surplusage and the evidence is not rendered insufficient merely because the prosecution did not prove that specific manner of penetration at trial. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.     *Introduction of Confession (Claim III)*

Petitioner next contends that his privilege against self-incrimination was violated by the introduction of his statement to an official of the Michigan Family Independence Agency. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.     *Clearly Established Law*

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court considered the applicability of the Fifth Amendment's Self-Incrimination Clause to custodial interrogations by the police. The Court ruled that, in some circumstances, statements made while in custody can violate the Self-

Incrimination Clause even if the statement was otherwise "voluntary" under the Due Process Clause.

As the Court has more recently explained, the *Miranda* decision

> concluded that the coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements, and thus heightens the risk that an individual will not be "accorded his privilege under the Fifth Amendment . . . not to be compelled to incriminate himself." [*Miranda*, 384 U.S.] at 439. Accordingly, we laid down "concrete guidelines for law enforcement agencies and courts to follow." *Id.*, at 442. Those guidelines established that the admissibility in evidence of any statement given during custodial interrogation of a suspect would depend on whether the police provided the suspect with four warnings. These warnings (which have come to be known colloquially as "Miranda rights") are: a suspect "has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of any attorney, and that if he cannot afford an attorney one will be appointed for him prior to questioning if he so desires." *Id.*, at 479.

*Dickerson v. United States*, 530 U.S. 428, 435 (2000) (parallel citations omitted). The *Miranda* Court explained that if the suspect indicates that he wishes to remain silent, "the interrogation must cease." *Miranda*, 384 U.S. at 474. Similarly, if the suspect requests counsel "the interrogation must cease until an attorney is present." *Id.*; *see also*, *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). Although it has been characterized otherwise at times, the rule of *Miranda* is of federal constitutional dimension. *See Dickerson*, 530 U.S. at 438-40. Thus, claims based on the right to counsel at questioning recognized in *Miranda* are cognizable on habeas review. *See id.* at 439 n.3; *Thompson v. Keohane*, 516 U.S. 99, 107 n.5 (1995).

The *Miranda* rule protects a suspect's Fifth Amendment privilege not to be "compelled" to incriminate himself. The rule is based on the notion that "custodial police interrogation, by its very nature, isolates and pressures the individual," and therefore "the coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements, and thus heightens the risk that an individual will not be 'accorded his privilege under the Fifth Amendment . . . not to be

compelled to incriminate himself.'" *Dickerson*, 530 U.S. at 435 (quoting *Miranda*, 384 U.S. at 439). To guard against this, *Miranda* "laid down 'concrete guidelines for law enforcement agencies and courts to follow.'" *Id.* (quoting *Miranda*, 384 U.S. at 442). This rationale for the rule, however, also limits its applicability to only those interrogations which are "custodial." *See Thompson*, 516 U.S. at 102; *California v. Beheler*, 463 U.S. 1121, 1124 (1983) (per curiam); *Oregon v. Mathiason*, 429 U.S. 492, 494 (1977) (per curiam). "Custody for *Miranda* purposes has been . . . narrowly circumscribed." *Minnesota v. Murphy*, 465 U.S. 420, 430 (1984). As the Court explained in *Miranda*, an interrogation is custodial only where the suspect "has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. In other words, although a court must consider the totality of the circumstances surrounding the interrogation, the ultimate inquiry is whether there has been a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Murphy*, 465 U.S. at 430 (internal quotation omitted); *see also*, *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam).

   2.   *Analysis*

   At trial, Detective Heather Martin testified that she had a brief conversation with petitioner at the Kent County Jail. According to Martin, petitioner told her that "CPS [Child Protective Services] put him [in jail] and that he must be guilty or CPS wouldn't have put him there." Trial Tr., dated 7/24/03, at 337. Petitioner contends that on December 23, 2002, he was involuntarily committed to the Pine Rest Mental Hospital. On January 2, 2003, Detective Martin visited him at Pine Rest, introduced herself, and told him that he was under arrest. He was then handcuffed and transported to the Kent County Jail. Petitioner contends that, once at the jail, he was interviewed by an official of the Michigan Family Independence Agency, who told petitioner to confess or he

29

would make sure that petitioner's children were taken away from him. Immediately after, Detective Martin came into the room and started asking him questions, without first advising him of his *Miranda* rights.

Undoubtedly, under petitioner's version of events petitioner's rights under *Miranda* were violated. Petitioner's problem, however, is that nothing in the record supports his version of events. On cross-examination, Detective Martin denied that she talked to petitioner at Pine Rest, and described the circumstances under which petitioner made his statement:

> I went over to the correctional facility to get Mr. McQueen's side of these allegations and give him the opportunity to speak to me. I met with him in an interview room at the correctional facility. I explained to Mr. McQueen who I was, what my job was, and indicated to him that there were allegations of sexual abuse.
> Prior to any questioning he did state the comment about CPS.

Trial Tr., dated 7/24/03, at 340-41. In response to counsel's question whether he waived his right to counsel, Detective Martin stated: "I read him – I did not ask him any questions at that point. That was something that he offered and prior to my questioning. I did read him his *Miranda* rights, correct," and that petitioner's statement "was a blanket statement, and I didn't ask him any questions about that because I didn't read him *Miranda* yet." *Id*. at 341. In his own testimony, petitioner did not testify regarding this statement at all.

The record fails to support petitioner's claim that Detective Martin questioned him without first reading him his *Miranda* rights, and as explained above petitioner is not entitled to an evidentiary hearing to further develop the factual basis of his claim. Thus, the Court is left only with Detective Martin's testimony regarding the circumstances of the statement, and under Detective Martin's version of events there was no *Miranda* violation. As noted above, according to Detective Martin petitioner volunteered his statement after she had introduced herself but before she had the

opportunity to read him his rights and before she asked any questions. *Miranda* does not bar all statements taken by the police after a person has been taken into custody; rather, it applies only to those statements that result from "express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). "By its own terms, *Miranda* does not apply to volunteered statements." *Anderson v. Thieret*, 903 F.2d 526, 531-32 (7th Cir. 1990); *see also*, *Miranda*, 384 U.S. at 478 ("The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated."). Thus, "statements voluntarily initiated by defendants, absent police interrogation or its functional equivalent, are admissible even in the absence of *Miranda* warnings." *United States v. Campbell*, 609 F. Supp. 2d 674, 689 (E.D. Mich. 2009) (Rosen, J.). Here, the record evidence establishes that petitioner's statement was spontaneously made, and was not made in response to any police questioning or its functional equivalent. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.     *Prosecutorial Misconduct (Claim IV)*

Petitioner next raises a number of claims that the prosecutor committed misconduct through various comments at his trial. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.     *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation

omitted).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused."  *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted).  In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial."  *Id.* (internal quotation omitted).

2.  *Analysis*

a.  *Mischaracterization of Facts and Evidence*

Petitioner first contends that the prosecutor committed misconduct by mischaracterizing the facts and evidence.  Specifically, petitioner identifies the following mischaracterizations:

- During opening argument, the prosecutor stated that petitioner's wife (the victim's mother) would testify that petitioner was "obsessed with pornography."  Trial Tr., dated 7/23/03, at 134.  In actuality, petitioner contends, his wife testified only that she once saw adult pornography on petitioner's computer.

- In cross-examining petitioner, the prosecutor reference that "fifty percent of [the victim's] hymen was also damaged."  *Id.*, dated 7/24/03, at 409.  In actuality, petitioner contends, the medical testimony established only a small cleft in the victim's hymen.

- In closing argument, the prosecutor stated that petitioner's wife testified that "she didn't want to break up this family."  *Id.* at 421.  Petitioner contends that there was no such testimony.

- In closing argument, the prosecutor argued that the victim had written a letter to petitioner while he was in jail, and in response to the letter petitioner wrote a response in which he "tells her she's not lying."  *Id.*  Again, petitioner contends that there was no such testimony.

A review of the prosecutor's comments and the evidence at trial belies petitioner's claims.

With respect to the opening statement comment about pornography, the testimony of petitioner's wife did not state a particular number of times that she saw pornography on petitioner's computer. She testified that she observed pornography on his computer, and that they had argued about his viewing pornography. *See* Trial Tr., dated 7/23/03, at 218. While a particular number of times was not given by petitioner's wife, the general nature of her testimony supports an inference that petitioner's viewing of pornography was not a one-time occurrence. Thus, while the prosecutor's use of "obsessed" may have been somewhat overwrought, the evidence adduced at trial fairly supported the prosecutor's preview of that evidence in his opening statement.

With respect to the medical testimony, Dr. Debra Simms testified that she observed on the victim's hymen a "small tear, well healed, and that extended through less than fifty percent of the width of the hymenal rim." Trial Tr., dated 7/23/03, at 279. During cross-examination of petitioner, the prosecutor asked, "You are also aware that fifty person [sic] of her hymen was also damaged, consistent with what she testified you had done to her over a period of years." *Id*., dated 7/24/03, at 409. While it is true that Dr. Simms testified that the tear was less than 50%, petitioner has not explained how the prosecutor's question prejudiced him. The import of Dr. Simms's testimony was that the tear on the victim's hymen was consistent with digital penetration; the exact percentage of the tear was important only in forming Dr. Simms's opinion. The size of the tear had no independent significance, and the prosecutor's question was directed at the consistency of the tear with digital penetration, not the actual size. In these circumstances, the prosecutor's brief misstatement of Dr. Simms's testimony did not prejudice petitioner.

With respect to the prosecutor's comment that petitioner's wife testified she did not want to

33

break up the family, the prosecutor's comment occurred in the course of a discussion about petitioner's wife's initial hesitancy when first confronted with the victim's allegations. While petitioner's wife did not use the exact words used by the prosecutor, she did testify that when the victim first accused petitioner of "feeling her up" they had a family meeting at which petitioner denied the victim's story, and that as his wife she wanted to believe him. *See* Trial Tr., dated 7/23/03, at 223-24. Thus, the prosecutor's comment was a fair inference from the testimony of petitioner's wife.

With respect to the prosecutor's comment concerning the wife's testimony that petitioner said "she's not lying," the wife did, in fact, so testify. *See id*. at 228. Contrary to petitioner's argument, the prosecutor did not state that petitioner had written a letter to this effect. Rather the prosecutor, while arguing that petitioner's wife was conflicted about the allegations, noted that "[s]he even wrote him a letter in the jail." *Id*., dated 7/24/03, at 421. The prosecutor immediately followed this up with, "[b]ut he tells her she's not lying." *Id*. It is true that this could be read to infer that petitioner made this statement in response the wife's letter, but the prosecutor did not say so, and nowhere else did the prosecutor suggest that petitioner had said "she's not lying" in a letter. In any event, the import of the prosecutor's argument was the fact that petitioner had stated "she's not lying," not the medium through which this statement was conveyed to petitioner's wife. Because petitioner's wife in fact testified that petitioner said that the victim was not lying, petitioner cannot show that he was denied a fair trial by the prosecutor's comment.

### b. *Mischaracterization of Defense*

Petitioner also contends that the prosecutor mischaracterized his defense by insinuating that the defense was asserting that the victim deliberately injured herself as part of her scheme to

fabricate the charges against petitioner. During rebuttal, the prosecutor argued: "And, of course, to take it a step farther, you've got the medicals. Something did happen to her consistent with blunt force trauma. How she planned that one out, I don't know, just to make sure she had enough injury to her hymen and to make sure she had enough laceration to her rectal area." Trial Tr., dated 7/24/03, at 446. Petitioner argues that this comment was improper because there was medical testimony that the injury to the victim's hymen could have been caused by an improperly inserted tampon. While Dr. Simms did so testify, she also testified that the victim's injury was consistent with digital penetration. Further, the prosecutor's comment was part of a long discussion of the implausibility of petitioner's defense in light of the testimony and the medical evidence. *See id.* at 443-46. The prosecutor was free to comment that the jury should use its common sense in evaluating the evidence and find that petitioner's defense was implausible. *See United States v. Catano*, 65 F.3d 219, 228 (1st Cir. 1995); *United States ex rel. Hamilton v. Ellingsworth*, 629 F. Supp. 356, 366 (D. Del. 1988). The prosecutor's argument was a fair inference from the evidence, and a fair response to petitioner's defense. Thus, the argument was not improper.

### c. Admission of Evidence of Petitioner's Incarceration

Petitioner next contends that he was denied a fair trial by the introduction of evidence that he was incarcerated. During the questioning of several witnesses, the prosecutor asked about the witnesses' communications with petitioner after he was arrested. These questions, or the response to the questions, brought out that petitioner was in jail at the time. *See* Trial Tr., dated 7/23/03, at 220, 232; *id.*, dated 7/24/03, at 337-38, 340, 400. During closing argument, the prosecutor referenced a letter written by petitioner's wife while he was in jail. *See id.* at 421. These comments were not improper. Neither the witnesses nor the prosecutor suggested that petitioner was

incarcerated for some crime other than the crime for which he was on trial, and the jury likely would have already suspected that petitioner was incarcerated on the charges on which he was being tried given the seriousness of those charges. Further, the testimony about petitioner's incarceration was limited to the fact of pre-trial confinement, necessary to give context to the witnesses' testimony regarding their conversations with petitioner. In these circumstances, the prosecutor's and witnesses' "fleeting, context-setting references to pre-trial detention" were not improper and did not deprive petitioner of a fair trial. *Tolbert v. LeCureaux*, 811 F. Supp. 1237, 1244 (E.D. Mich. 1993) (Gadola, J.); *see also*, *Burton v. Renico*, 391 F.3d 764, 777-78 (6th Cir. 2004).

### d. Bolstering Testimony

Petitioner next contends that the prosecutor committed misconduct by eliciting bolstering testimony from his wife. During questioning of petitioner's wife, the prosecutor elicited from her that, during the course of time when the allegations were being made and discussed within the family, she believed the victim and thought that petitioner was lying. *See* Trial Tr., dated 7/23/03, at 226, 233, 234, 256-57, 260.[6] Petitioner's argument raises a claim of evidentiary bolstering. This claim fails, for two reasons.

First, it is far from clear that the bolstering testimony was improperly admitted as a matter of state law. In some instances, the testimony of a victim's prior, consistent rape allegations may be relevant and admissible to rebut a defendant's claim that the victim is fabricating the charges. *See People v. Sabin*, 463 Mich. 43, 69 n.12, 614 N.W.2d 888, 902 n.12 (2000); *People v. Starr*, 457 Mich. 490, 501-02, 577 N.W.2d 673, 678 (1998); *cf*. MICH. R. EVID. 801(d)(1)(B) (prior consistent

---

[6]Petitioner identifies two other instances, but these did not involve petitioner's wife's opinion on the veracity of either the victim or petitioner. Rather, in one instance petitioner's wife testified that the victim's stories were consistent, not that she believed them, *see* Trial Tr., dated 7/23/03, at 235, and in the other she related petitioner's own statement to her that the victim was not lying, *see id.* at 232.

statement not hearsay if the declarant testifies at trial and that statement is offered to rebut a charge of recent fabrication). Further, because petitioner accused the victim of lying, evidence of the victim's character for truthfulness was admissible under MICH. R. EVID. 608(a). In any event, even if the evidence was inadmissible as a matter of state law, or as a matter of federal evidence law, petitioner cannot show that the introduction of this evidence deprived him of due process or any constitutional right. On the contrary, "[b]olstering claims have been (expressly) held not to be cognizable on federal habeas review." *Diaz v. Greiner*, 110 F. Supp. 2d 225, 234 (S.D.N.Y. 2000); *cf. Regan v. Hoffner*, 209 F. Supp. 2d 703, 715 (E.D. Mich. 2002) (Friedman, J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### e. Shifting the Burden of Proof

Petitioner next contends that the prosecutor improperly shifted the burden of proof by "introduc[ing] the consent that defendant possessed pornography and nude pictures of his stepdaughter, but no evidence was ever produced to this assertion nor any indicia of reliability established." Pet., at 5*l*. Petitioner does not explain, however, how the presentation of this evidence in any way shifted the burden to him to prove his innocence. And, contrary to petitioner's assertion, there was in fact evidence presented both that petitioner took nude photographs of the victim, *see* Trial Tr., dated 7/23/03, at 144-45, 177, and that he had hidden or deleted the pictures in such a way that they could not be recovered, *see id.* at 220.

Petitioner also argues that the prosecutor shifted the burden of proof by stating during rebuttal argument that "[i]n these types of trials the victim literally is put on trial, as opposed to robbery, or home invasion. She's put on trial." *Id.*, dated 7/24/03, at 448. The prosecutor's comment was made in the context of discussing petitioner's defense that the victim was lying. At

no point in this statement, or during any of the closing argument, did the prosecutor suggest or imply that petitioner bore the burden of proof. Further, "any possible prejudice which might have resulted from the comment was cured by the trial court's instructions regarding the proper burden of proof." *Stewart v. Booker*, No. 07-14081, 2009 WL 973343, at *5 (E.D. Mich. Apr. 9, 2009) (Cohn, J.) (citing *Scott v. Elo*, 302 F.3d 598, 603-04 (6th Cir.2002)). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### *f. Appeal to Sympathy*

Petitioner next contends that the prosecutor improperly appealed to sympathy for the victim in his argument to the jury. During closing argument, the prosecutor argued that it was hard for the victim to disclose the sexual assaults to other people and to testify at trial. *See* Trial Tr., dated 7/24/03, at 417, 419, 420, 423-24. These comments, however, were proper arguments used to explain why the victim had delayed disclosure and why there may have been some inconsistencies in her testimony, both issues made relevant by petitioner's defense. Further, even if improper the prosecutor's references to the victim were much less prejudicial than other comments referring to victims which have been upheld on habeas review. *See, e.g.*, *Brechen v. Reynolds*, 41 F.3d 1343, 1355-56 (10th Cir. 1994); *United States ex. rel. Rockman v. DeRobertis*, 717 F. Supp. 553, 569-70 (N.D. Ill. 1989)(prosecutor's reference to victim "in his grave crying out for a guilty verdict" did not deprive petitioner of a fair trial); *Kordenbrock v. Scroggy*, 680 F. Supp. 867, 896-96 (E.D. Ky. 1988)(petitioner was not denied a fair trial where, during the guilt-innocence phase of the trial, the prosecutor admonished the jury not to forget the victim because "he had a right to live."), *rev'd on other grounds*, 919 F.2d 1091 (6th Cir. 1999)(en banc).

The prosecutor's references to petitioner as a child molester or perverse likewise did not

deprive petitioner of a fair trial, nor did the prosecutor's references to the victim as a "young girl." Petitioner was on trial for repeatedly sexually assaulting a minor, and by arguing that petitioner was guilty of these offenses the prosecutor was naturally arguing that petitioner was, in fact, a child molester. The comments did not inject into the trial anything that was not already apparent from the prosecutor's argument respect petitioner's guilt. *See Kappos v. Hanks*, 54 F.3d 365, 367-68 (7th Cir. 1995) (petitioner not denied a fair trial where prosecutor referred to him as a "murderer" and "artful liar"). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this prosecutorial misconduct claim.

### g. Use of Religious Beliefs

Finally, petitioner contends that he was denied a fair trial by the prosecutor's questioning of his religious beliefs. During opening statement, the prosecutor indicated that "[m]om will tell you that the defendant was obsessed with pornography, would blame the mother or the wife for not doing her biblical duty, and that's why he had to look at that." Trial Tr., dated 7/23/03, at 134. During questioning of petitioner's wife, the prosecutor elicited that petitioner had in fact told her "that if I did not fulfill my biblical wifely duty, that he would find it somewhere else." *Id.* at 218. And, during cross-examination of petitioner, the prosecutor asked whether petitioner had told his wife that he "had to view pornography because she wasn't doing her biblical duty." *Id.*, dated 7/24/03, at 397. Petitioner responded that he did not make that statement, but that they did "talk[] about what the Bible said about a wife's relationship in the sexual arena[.]" *Id.* Petitioner cannot show that these references to his views about a wife's biblical duties deprived him of a fair trial.

A prosecutor may not inject a person's religious beliefs into a trial to argue that those beliefs themselves establish the credibility or lack of credibility of a witness or establish guilt. *See* FED. R.

EVID. 610; MICH. R. EVID. 610. Notwithstanding this rule, "[a] person's beliefs, superstitions, or affiliations with a religious group is properly admissible where probative of an issue in a criminal prosecution." *United States v. Beasley*, 72 F.3d 1518, 1527 (11th Cir. 1996). Here, the evidence relating to petitioner's beliefs regarding a wife's biblical duties, although based on his view of the Bible, had nothing to do with religion. Rather, it was the existence of his sexual expectations that were not being fulfilled which the prosecutor argued compelled him to assault his stepdaughter. The evidence was therefore relevant, and was not improperly used to discredit petitioner on the basis of his religious beliefs. *Cf. United States v. Hoffman*, 806 F.2d 73, 708-09 (7th Cir. 1986) (evidence of religious beliefs properly admitted where they were probative of defendant's motive). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

I.      *Ineffective Assistance of Counsel (Claims V & VII)*

Petitioner next contends that his trial and appellate counsel were constitutionally ineffective in a number of respects. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of

the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

2.     *Trial Counsel*

a.  *Failure to Object to Hearsay and Bolstering Testimony*

Petitioner first contends that trial counsel was ineffective in failing to object to hearsay testimony of the victim's prior consistent statements, which were used to bolster the victim's testimony regarding the sexual assaults. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

First, petitioner cannot establish that counsel's performance was deficient. Because petitioner did not properly move for an evidentiary hearing in the state courts and therefore is not entitled to one here, the Court does not know why counsel failed to object. It is reasonable to

conclude, however, that counsel deliberately failed to object as part of a trial strategy of discrediting the victim. As explained by the Michigan Court of Appeals:

> Defendant maintained that complainant had fabricated the accusations. During his closing, defense counsel pointed out inconsistencies in complainant's own testimony as well as inconsistencies in what she told some of the other witnesses. He noted that complainant had given inconsistent information to others about the number of times the sexual assaults had occurred and when, and had originally told a friend that someone besides defendant was the perpetrator. It appears that defense counsel may have consciously chosen not to object so that inconsistencies in versions told to various people could be brought out.

*McQueen*, 2005 WL 2016460, at *2, slip op. at 2. And such a strategy would have been reasonable for counsel to pursue. *See United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009); *Singleton v. Crosby,* No. 8:03CV958, 2005 WL 1074292, at *7 (M.D. Fla. Apr. 29, 2005).

Further, petitioner cannot show that he was prejudiced by counsel's failure to object because there is not a reasonable probability that such an objection would have succeeded. Under Michigan law, evidence of a victim's prior, consistent rape allegations may be relevant and admissible to rebut a defendant's claim that the victim is fabricating the charges. *See People v. Sabin*, 463 Mich. 43, 69 n.12, 614 N.W.2d 888, 902 n.12 (2000); *People v. Starr*, 457 Mich. 490, 501-02, 577 N.W.2d 673, 678 (1998); *cf*. MICH. R. EVID. 801(d)(1)(B) (prior consistent statement not hearsay if the declarant testifies at trial and that statement is offered to rebut a charge of recent fabrication). Because the evidence may well have been admissible, and because in any event a strategy of focusing on the victim's inconsistencies was reasonable, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Failure to Object to Prosecutorial Misconduct

Petitioner next contends that counsel was ineffective for failing to object to the instances or prosecutorial misconduct identified above. As explained above, however, petitioner's prosecutorial

misconduct claims are meritless, and thus any objection would have been futile. Counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Failure to Object to Photographs

Petitioner also argues that counsel was ineffective for failing to object to photographs of the injuries to the victim's hymen and anus. Again, however, petitioner cannot show that any such objection would have been successful. Under Michigan law, "[i]f photographs are otherwise admissible for a proper purpose, they are not rendered inadmissible merely because they vividly portray the details of a gruesome or shocking accident or crime, even though they may tend to arouse the passion and prejudice of the jury." *People v. Hoffman*, 205 Mich. App. 1, 18, 518 N.W.2d 817, 826 (1994). Consistent with this view, the state courts confronted with the question have uniformly found that the introduction of probative, clinical photographs of injury to a rape victim's hymen or anus are not unduly prejudicial and may be properly admitted at trial. *See, e.g.*, *People v. Earp*, 978 P.2d 15, 50 (Cal. 1999); *State v. Grant*, 634 A.2d 1181, 1186 (Conn. Ct. App. 1993); *State v. Blanchette*, 134 P.3d 19, 32-33 (Kan. Ct. App. 2006); *Wyatt v. State*, 23 S.W.3d 18, 29-30 (Tex. Crim. App. 2000); *State v. Gulbransen*, 106 P.3d 734, 740-41 (Utah 2005). Thus, any objection would have been futile, and counsel was therefore not ineffective for failing to object to the admission of the photographs.

### d. Failure to Call Witness

Petitioner also contends that counsel was ineffective for failing to call as a witness a Mr.

Hunt, petitioner's business partner. According to petitioner, Hunt could have testified that he was told by petitioner's wife that the she had read in the victim's diary a recantation letter written by the victim. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

First, petitioner cannot show that any testimony offered by Hunt would have been admissible. The victim's statements made in a recantation letter in her diary, if such statements existed, would have constituted hearsay. The statements might have been admissible on cross-examination of the victim for impeachment purposes, but that would not have been admissible through the testimony of another witness to establish the truth of the matter asserted in the statements, *i.e.*, that petitioner did not sexually assault the victim. Moreover, even if the alleged statements in the diary would otherwise have been admissible, Hunt could not have testified to them because his only knowledge of them came through the further hearsay statements made by petitioner's wife to Hunt. In light of this double layer of hearsay, there is not a reasonable probability that Hunt would have been permitted to testify as petitioner alleges he would have testified.

Further, petitioner's claim is not supported by anything in the record, nor by any offer of proof here. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same). "Generally, a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also, Pittman v. Florida*, No.

8:05-cv-1700, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008). Here, the record contains no testimony, affidavit, or other offer of proof establishing that Hunt was in fact willing and able to testify on petitioner's behalf, nor detailing the substance of that testimony. In these circumstances, petitioner has failed to carry his burden of establishing prejudice. *See Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002); *Dell v. Straub*, 194 F. Supp. 2d 629, 650-51 (E.D. Mich. 2002) (Friedman, J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### e. Failure to Object to Jury Instructions

Petitioner also contends that counsel was ineffective for failing to object to the jury instructions given by the trial court. As noted above, however, any error in the instructions was harmless. Because the error in the giving of the instructions was harmless, it necessarily follows that petitioner cannot establish that he was prejudiced by counsel's failure to object. *See Phillips v. Diguglielmo*, 592 F. Supp. 2d 809, 811 (E.D. Pa. 2008); *Johnson v. Renico*, 314 F. Supp. 2d 700, 711 (E.D. Mich. 2004) (Gadola, J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### f. Failure to Seek Suppression of Statement

Petitioner next contends that counsel was ineffective for failing to seek suppression of his statement to Detective Hamilton. As explained above, however, there is no evidence in the record which supports his underlying claim that the statement was taken in violation of his rights under *Miranda*, and petitioner is not entitled to an evidentiary hearing to develop facts in support of this claim. Thus, petitioner cannot meet his burden of establishing that counsel was ineffective, and petitioner is accordingly not entitled to habeas relief on this claim.

### g. Failure to Object to Other Acts Evidence

Petitioner next contends that counsel was ineffective for failing to object to other acts evidence, in particular, evidence that he stored pornography on his computer and took nude photographs of the victim. Petitioner does not show, however, that any objection to this evidence would have been sustained. The pornography evidence was not improper propensity evidence under Rule 404(b), but rather was introduced for the proper purpose of showing petitioner's motive, *i.e.*, his view of the role of sex in the marriage and his desire to obtain sex from someone other than his wife. The nude photographs were part of the *res gestae* of the crime, and thus was not "other acts" evidence under Rule 404(b). Thus, petitioner cannot show that counsel was ineffective for failing to object to the admission of this evidence.

### h. Failure to Obtain an Expert

Finally, petitioner contends that counsel was ineffective for failing to obtain an expert to contradict the testimony of the prosecution's medical expert. However, counsel ably cross-examined Dr. Simms, eliciting that the injuries sustained by the victim could have been caused by something other than digital penetration, such as the improper insertion of a tampon. Further, it is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same). "Generally, a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Pittman v. Florida*, No. 8:05-

cv-1700, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008). Here, petitioner has identified no specific experts, nor pointed to anything which suggests that such experts would have testified on his behalf. "Speculation about what an expert could have said is not enough to establish prejudice." *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997). In these circumstances, defendant has failed to meet his burden of establishing prejudice. *See Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002); *Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001); *Tafaya v. Tansy*, 9 Fed. Appx. 862, 871, 2001 WL 557971, at *6 (10th Cir. 2001); *Dell v. Straub*, 194 F. Supp. 2d 629, 650-51 (E.D. Mich. 2002) (Friedman, J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.    *Appellate Counsel*

Petitioner also contends that his appellate counsel was ineffective for failing to raise his habeas claims on direct appeal. In the appellate counsel context, a showing of prejudice requires a showing that petitioner's claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). As explained in this Report, all of petitioner's claims are without merit, and thus petitioner cannot show that counsel was ineffective for failing to raise them on direct appeal. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

J.    *Cumulative Error (Claim VI)*

Finally, petitioner contends that he was denied a fair trial by the cumulative effect of the errors at his trial. It is true that "[e]rrors which standing alone may be deemed harmless or insufficiently prejudicial to amount to a denial of due process may cumulatively produce a trial setting which is fundamentally unfair." *Payne v. Janasz*, 711 F.2d 1305, 1316 (6th Cir. 1983)

(Jones, J., dissenting); *accord Walker v. Engle*, 703 F.2d 959, 968 (6th Cir. 1983). This rule, however, applies only to constitutional errors; the accumulation of non-errors cannot collectively amount to a violation of due process. *See Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002); *United States v. Lumpkin*, 192 F.3d 280, 290 (2d Cir. 1999); *McKinnon v. Ohio*, No. 94-4256, 1995 WL 570918, at *12 (6th Cir. Sept. 27, 1995); *Fero v. Kerby*, 39 F.3d 1462, 1475 (10th Cir. 1994). As noted and discussed in this Report, the only arguable constitutional error identified by petitioner is the error relating to the jury instructions, and that error was harmless. The remainder of petitioner's claims fail to establish any constitutional error, and thus there are no further errors to cumulate with the instructional error claim to establish a due process violation. Thus, petitioner's cumulative error claim fails.

K.      *Recommendation Regarding Certificate of Appealability*

        1.      *Legal Standard*

        As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously

48

less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id*., advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

If the Court accepts my recommendation on the merits, the Court should also deny petitioner a certificate of appealability, for the reasons explained above. In light of the victim's testimony describing multiple sexual penetrations, the resolution of petitioner's sufficiency of the evidence claim is not reasonably debatable. Likewise, the resolution of petitioner's instructional error claims is not reasonably debatable in light of the fact that any error was clearly harmless given that the victim's age and relationship to petitioner were undisputed, and in light of the fact that there is no constitutional right to a jury unanimity instruction. Because there is no evidence in the record which supports petitioner's claim that his statement to Detective Martin was the result of custodial interrogation, and because petitioner is not entitled to an evidentiary hearing to develop evidence in support of this claim, the resolution of petitioner's *Miranda* claim is not reasonably debatable. Likewise, for the reasons explained above petitioner's prosecutorial misconduct and ineffective assistance claims fail to raise a substantial showing of a denial of petitioner's constitutional rights. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

L.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.      <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED.

R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 4/27/10

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and James Mcqueen at Marquette Branch Prison by electronic means or U.S. Mail on April 27, 2010.

s/Eddrey Butts